Good morning, Your Honors. Jason Saunders for Mr. Brooks. I'd like to reserve four minutes, if I may. I have a 15-minute schedule today, I believe. Good morning. This case involves two important issues, whether the district court improperly denied Mr. Brooks' constitutional right to proceed pro se, and secondly, whether a predicate offense of Washington State burglary could be used to determine he was a career armed criminal. The first issue, for FRERETA purposes, in this case it's true that Mr. Brooks had three attorneys before and came in again wanting a new attorney. When the court denied him that request, the court came out with, what did you want to represent yourself? So the court asked the questions, and he said, well, you know, rather than proceed with this man, I guess I would say I have to. So he made a decision that he wanted to proceed forward pro se. That decision was strong enough for the court to conduct a colloquy. And the court conducted the FRERETA colloquy, and at the end of it, Mr. Brooks said, well, maybe with all that information and what I've talked to my counsel, I've changed my mind. I'll use counsel. I've changed my mind. I'll proceed with him. But it was within five pages of transcript, within probably two minutes of time, where counsel was talking about clean-up motions and other things, where right before jury and panel met, he said, I would rather proceed pro se. And at that point, the court only ruled, well, that ship has sailed. He said, in essence, it's untimely. I gave you your chance before. You said you didn't want to. That ship has sailed. You don't get to change your mind. That's what the ruling of the court was. Well, you know, that ship has sailed is sort of a metaphor that may mean the judge was saying your request isn't timely, but it also might mean that your request, you're being equivocal. First you say one thing. Then you say another. It could look like Mr. Brooks is trying to game the system, to have an appeal either way. So if the judge lets him represent himself after he changes his mind, he's got the record that he said five minutes earlier, I don't want to represent myself. Or it could look like it's some kind of ploy for delay. The question is, you know, how many phoretic colloquies does the court have to go through if somebody keeps going back and forth? You only have to go through one colloquy, and the court did that. The decision that was made immediately after, within a few minutes, that I need to proceed pro se before jury impendment was timely. And there was no record made. Why do you say it was timely? It was before jury impendment. It was going to be timely. There's nothing in Phoretic itself that says that a request is timely so long as it's before jury impendment. It's one of the considerations. There's a timeline involved. That's what the Ninth Circuit has said, though. Yes. As long as the request is made before the jury is. Right. I agree. So I think, you know, what we have here is my client trying to get new counsel. It's not going to happen. He's exercising his right to proceed pro se. He very swiftly considers the fact that he doesn't want to do it. It goes right back to within two minutes that, yes, given this, I'm moving forward. I want to represent myself. And had the court decided that that was unequivocal, could have made such a finding, but he never did, the timing thing only went to the ship has sailed doesn't mean, well, I think you're going back and forth and I don't understand what you're saying. It's to say, I just ruled on that, and you're done. Sit down. So I think in that case, the record is clear that that is what happened in this case. It was denied only on a timing basis and nothing else. And second of all, I'll go into my sentencing issue. This is a case where my client had three prior convictions, one of which is at issue today. It's a Pierce County burglary conviction. And we have to, in order for him to be an armed career criminal, the government has to prove that it was a violent crime. The government concedes here that this is a modified categorical approach, so we don't need to go down that path. And I think the issue is whether the offer plea itself to entering a building is sufficient for a violent crime under the ACCA. Although it says, counsel, it says to read it, and it would be helpful if you addressed the language of the information, enter or remain unlawfully in a building located at 115 Orchard Avenue, South Eatonville, known as the residence of Galen Cobol, contrary to the statute. So it uses the term building, but then it designates it as known as the residence. So how does that play into our analysis? Well, in two ways. I think the counsel who wrote the briefing did a very good job talking about the offered plea and how he's not admitting that he's guilty, but will take this plea offer only insofar as he's taken advantage of the government's offer. Yeah, but there's legal consequences, though, to pleading guilty. I agree, Your Honor. And you essentially admit what's in the legal consequence in this context is you admit what's in the information. Well, you know, only as the effect of what you've done. And if it only alleged building, as you've said, then I think you might be in a good position because then you would need other facts, which he doesn't provide through his Alfred plea. He doesn't admit to anything else. I understand, but for second-degree burglary, which is separate in Washington State from residential burglary, you're not talking about a dwelling, you're talking about a building. Yes. So in order to find him guilty of entering a building, you don't need the information concerning whether or not it was a dwelling or residence or anything else. It's outside of what you need for the conviction. No, but my point was simply that he mentioned an Alfred plea. So an Alfred plea, he only says, hey, I'm going to take this deal here. Then the judge has to make his own separate determination whether or not there's a basis for that. That's true. But the legal consequence of that Alfred plea is that he admits what's in the allegations in the complaint. Well, you know, under – I'm talking about legal significance. I'm not talking about, you know, for operation of law, he's guilty of what's charged in the information. I can tell you I've been practicing as an appellate lawyer in state court for a very long time, and what Alfred pleas almost always have is a box or an agreement that you can incorporate by reference, the information and the certificate of determination for probable cause. That was not done in this case, and there's no record of it. So if there's a factual basis for it, it would have to be found in the plea colloquy. All we have here is that he pled guilty to entering a residence. But I want to move on to my second point about that. Despite the Alfred plea, what we also have is this court's decision in Sanchez. And what's important about that case is, in that case, they were considering whether it is an aggravating felony for deportation purposes, using a modified categorical approach, whether the California sexual battery code compared with a federal sexual offense against minors. And the court says, well, for that generic federal crime, you have to actually prove that there was a minor. Even though the information stated there was a minor, even though his plea said or the colloquy said she was 13 years old, it doesn't matter because those facts are not necessary to the conviction itself. And so you can't reach in and take that evidence. And I think the important thing to say is, you know, in Sanchez they even have very eloquent languages to the effect of, it's too bad that we have to turn a blind eye to these facts that might prove this. But, unfortunately, that's not facts necessary for the conviction. Let me ask you this. Why isn't the other conviction for his burglary of the country club, whatever it was called, why doesn't that also fall based on the argument you're making here? I will say this. I was not the authors of the pleadings. I got this case for oral argument. And it wasn't briefed by me. I would have briefed that issue. And certainly if the court would entertain a supplemental briefing. And what's different between the two? Well, you know, the only difference is the argument in this one is whether or not it was a He admitted that he entered a building that was a country club and that it was during the day. It might be considered a violent offense. In this, all we have is a residence. And then all we have is a building and that it was known as a residence. And I think the important thing to recognize, and I brought the statute with me, is that under the revised code of Washington, burglary in the second degree only requires that you enter into a building. It has nothing about a dwelling. Residential burglary talks about entering a dwelling. And that's actually a higher crime. But the most important thing about burglary in the second degree is, and I'll read it straight into the record, a person is guilty of burglary in the second degree if with intent to commit a crime against a person or property they're in, he or she enters unlawfully in a building other than a vehicle or a dwelling. So the statute itself says it can't be a dwelling. It has to just be a building. That's second degree burglary in the state of Washington. So even if he had facts in the information talking about that it was a residence and a dwelling, the statute, the very elements of the crime says it cannot be a dwelling to be a second degree burglary. So the specific language says it has to be other than a dwelling. Do you think the Supreme Court's forthcoming decision in discounts might have any impact on this case? Well, only so far as the question is whether they can even use a modified categorical approach when it comes to these cases. And if that case is ruled in the appellate's favor in that case, then I think, yes, it would apply to our case as well. But certainly I think the law as it is, the Sanchez argument, I think is straight on point. To reach in and find facts other than the elements of the crime or facts necessary for the crime, which is entering a building and it actually can't be a dwelling. Therefore, I think he was denied his right to have a jury determine facts or for him to admit facts necessary for the conviction. And this court should remand for resentencing. Unless the court has any questions, I'll keep the rest of my time. No questions here. Thank you, Your Honor. Thank you. Good morning, Your Honor. Your Honor, may it please the court. Matthew Thomas on behalf of the United States of America. The question for the court is whether or not to affirm the defendant's conviction and sentence in this case. And I would like to address something that Your Honor brought up about the statement that the defendant made. The statement that I guess we will proceed, Your Honor, with Mr. Ness, his attorney. That was made after a full Feretta hearing. And I would like to give Your Honors a context of this. We started court at 9 a.m. The jury veneer was sworn in at about 935 a.m. So this all happened in a very small time period. Judge Layton was very patient with the defendant. I'm not sure he had made an unequivocal request to represent himself. In fact, he made a point of pointing out that he wasn't moving to represent himself at the beginning of the hearing. Judge Layton held the Feretta hearing, and at the end of it, he asked him the question. And after conferring with his attorney, he made the statement that he wished to proceed with Mr. Ness. Now, what about the statement, the ship has sailed? Has the veneer been sworn at that time? No, Your Honor. The jury was about to come into the courtroom. They were out in the hallway. They were on their way up from the jury room. Yes. And then he says, he says, changed my mind, in essence, is what he said. What did he say? He says, Your Honor, I would rather proceed by myself. The court had just said, okay, ready for the jury. Your Honor, I would rather proceed by myself. Judge Layton said, the ship has sailed. I don't even want to comment on you're an accident investigator. And then I would ask the court to consider what the conversation was about. It was about his request for two expert witnesses, an accident reconstructionist and a medical expert, who he hoped would establish that this accident was staged, that the gun was planted on him. And that's why we believe that his request was for the purpose of delay, because he didn't have those two witnesses. And his attorney had not called such witnesses. And we think at this point he was trying to delay the trial so he could get those two witnesses. And that's why his request was equivocal. But to put all that together, we have to look at the whole context, don't we? Yes. And I would urge There was some prior exchange with the judge about those witnesses, right? Yes. At earlier, or different proceedings. During the suppression hearing. Yes. And the court at that time, they did not have a medical witness, but the court said that he would accept additional pleadings if they wished on that subject. When the, I guess it was the third lawyer or the fourth lawyer, the lawyer, the final lawyer. Mr. Ness was the third lawyer. The third lawyer. He went forward with some of Brooks' pro se motions, right? Yes. And did any of those pro se motions involve these witnesses, this whole issue? As I recall, the defendant mainly argued that the prior convictions needed to be proven at trial and it needed to be proven that they were violent felonies. I don't recall whether his pro se motion dealt with the expert witnesses or not. Okay. I'd like to ask you a question about Ninth Circuit precedent on timeliness. So my recollection is Ferreira itself says there has to be a timely request, but doesn't define what timely is. Then we've got some Ninth Circuit precedent saying a request is timely or can be timely if it's made before you and panel, the jury, so that even on the morning of trial, there can be a timely request. But my question is when you've made a timely request and there's been a full colloquy and at the conclusion of the colloquy, someone says, I want to stay with counsel, I don't want to represent myself. Can it be timely then to make a further request and, you know, change your mind basically? Is there any authority in the Ninth Circuit that says that we have to view such a change of mind after an earlier conclusion as timely? Your Honor, if the request is made before the jury is impaneled, it's timely. But the case law, for example, subject to the idea that it's not for purposes of delay. Exactly. For example, in U.S. v. Art, in that case, this Court pointed out that it cannot be for the purpose of delay and may not be equivocal. And our position here is because of the timing is important because it's right at the point where Judge Layton says bring in the jury. And it's important because the defendant knows now that he's not going to be able to call these two witnesses. And really, that's what the colloquy is about. Three questions. When he says, I've changed my mind, or whatever words he used, one, is that timely? Two, is it equivocal in light of his earlier statements? Three, is it for purposes of delay? Which of those three theories, which would be adverse to his forerunner request, does the government urge applies? And I realize Appellant says none of them apply. What's your theory? The latter two, Your Honor. The request was timely. It was before the jury was in panel. But for purpose of delay? Yes. And equivocal in light of his earlier statement? Yes. And in light of, you know, I think the deference and patience that the Court showed to him in conducting a full Faretta hearing, the defendant, after conferring with his lawyer, decided to keep his lawyer. Then in the last minute, as the jury's about to come in the courtroom, he blurts this out. And the conversation between the Court and the defendant at that time concerned the expert witnesses. And so for that reason, we believe that it was to delay the trial, which, by the way, Your Honor, if the Court had granted his request for new counsel, he would have delayed the trial by doing that as well. And so we believe that it was to delay the trial, and given the earlier Faretta hearing, that it was equivocal. Could I ask you a question on sentencing, please? Yes. In light of the fact that the Supreme Court has granted cert in discamps and as an issue to consider whether the modified categorical approach can be used, I guess whether there's an element of the generic offense that's lacking, or some phrasing like that in their grant, where it looks like they might resurrect the prior rule we had in the circuit in Navarro-Lopez, which was the Chief Judge's theory, from his Lee concurrence that was later adopted. Since that could happen, why shouldn't we defer submission on that issue at least and have it await whatever the Supreme Court does? Your Honor, the issue has been certified as a missing element, decamp as a missing element case. And basically what that means is the California statute is a little different from the Washington statute. The Washington burglary statute is almost exactly the same as the generic federal definition, which is unlawful entry of a building with intent to commit a crime. The missing element under the California statute itself is they don't have unlawful entry as part of their statute. You could, for example, be privileged to go into a store or something like that, but still have the intent to commit a crime. And if you interfered with their possessory interests, then you could be found guilty under the California statute. That's why the cases are different. We think this is really a classic case of the modified categorical approach. You have the same elements. Is that because the statute here is overbroad or divisible? Yes. And it's overbroad because Washington defines building more broadly than the generic definition. You could, for example, have a construction site that's fenced that would be included under building. If you entered that, that could be to steal tools. That could be committing a burglary. But we don't have that here. Judge Fisher had pointed out the language of the information. And there are a couple of cases that this Court has decided that are very similar, Stevens and Snyder, in which the pleadings in the case contained the address, the street location, showing that it was, in fact, a building. And that's what we have here. We have the residence of Mr. Cavall. He says, well, really, Bill, if you take all the allegations in the amended information, it's for all intents and purposes a dwelling. Yes. What's your response to that little argument? Well, no one's contesting that he was convicted of burglary in the second degree. Of a building. Yes. And typically under Washington law, you have residential burglary, which involves a residence. Often they're pled down to burglary second degree, which is often a business or something of that nature. But this is a building. And he was convicted of that crime. The fact that it was an Alford plea doesn't matter. The Court said that. This Court said that in Guerrero. Well, you know, sometimes these Alford pleas arise in the context where in California, again, in California, you can plead to a lesser included offense without the Court actually amending the information or the complaint, if it's a misdemeanor. And so then you have an Alford plea, and you don't know what facts the defendant is admitting. An Alford plea precludes anything, but that doesn't seem to be what we have here. He pleads to a specific amended information. And that's what I wanted to point out. And the legal effect seems to be that he admits what's contained within the information. Yes. In this case, both in the information and in the plea agreement, the elements of the crime were set forth, and they satisfy the elements of a generic burglary. So the elements of the crime are in the plea agreement that he signed and pled guilty to. Counsel? Yes. Maybe I misunderstood Mr. Brooks' counsel's argument,  and if you take the definition of second-degree burglary, that it can't be a dwelling and be second-degree burglary, and because residence is a dwelling, therefore, all that he could have pled to was a building, per the information that it – So I made a note of that, and I was hoping you could clarify your understanding of the argument and whether there's a response to it. Well, Your Honor, it was a dwelling. And yes, the burglary statute, burglary second degree, does provide that language. And as I was explaining, there is a higher level of burglary, the residential burglary, that would typically apply in Washington. When a person enters someone's home, that's usually charged as residential burglary. In this case, it was pled down to a burglary in the second degree. But that doesn't change the fact that he admitted to entering into a building with intent to murder a crime. And that's all it has to be for second-degree burglary, or is this just a building? Yes. Regardless of whether it's a residence? Yes, Your Honor. All right. I have a question just about Washington law, raised by one of your comments. Let's say someone's invited to a cocktail party at a neighbor's residence, and so they enter lawfully. While they're there, they hide behind a couch or a curtain. And then at night, they take all the silver and walk out. Is that not burglary in Washington law because they didn't enter unlawfully? No, it is not burglary under Washington law. You must have the unlawful entry. Well, what is it in that case? It would depend on the value of the silver. But probably if it's expensive silver, probably a first-degree theft. It would be theft, not burglary. Okay, well, thank you very much. I appreciate that. Thank you. Okay, for appellate rebuttal argument, and you've got some time, so please proceed. Your Honor, your last question was a very, very good question. And the question was, if you're invited in and you're there lawfully at the beginning but change your mind and steal something, can that be a burglary? The answer is yes. The statute makes it clear that you can unlawfully enter or remain lawfully, unlawfully remain. So unlawful entry is one way of committing the crime, but also unlawfully remaining with intent to steal is the other. So, yes, that would be a burglary. And there's plenty of case law that I can supplement if the Court would like to see that that's the case. That's right. That's not this case. I was just curious. But insofar as your question goes to the Dekamp issue, I think counsel's argument was that's different than our statute because it talks about the unlawful entries only in Washington, where the other one has no such statutory requirement. We do have the same requirement that you can remain unlawfully inside. So I think it would apply equally. Going back to the Feretta hearing, I think, once again, we're talking that, in fact, the government conceded it is timely. So the only question is whether the Court considered that it was equivocal or whether it was for a delay purpose. The Court never ruled on that. And, of course, that's the finder of fact is the District Court. This Court doesn't make findings for the District Court. This is a reviewing court of what happened. The only finding was that it was untimely, and that's what the Court ruled on. There's speculation from the government that probably what was going on is he was trying to delay, and probably what was going to go on was that he was going to ask for a continuance after and therefore delay. But all the Court would have to do in that circumstance is have, look, sir, we've gone through this already. I'm going to tell you right now, we've ruled on matters already, and I'm not going to delay this any longer. You have a choice. You can either proceed today by yourself or have counsel. The Court never did that. The Court's only ruling was on a timely basis. If the Court wanted to rule something else, the Court could have ruled something else, and the Court didn't. So I don't think we can speculate on what other purposes the Court might have entertained because those weren't rulings from the District Court. Do I have any other questions or any other comments, unless the Court has questions? Thank you. Your time is up. Thank you. Any questions? No questions from the panel. I want to thank counsel for appellant and appellee for their excellent arguments on Brooks. Very interesting case. We thank you both.
judges: Fisher, Gould, Paez